UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASMIN T. SMITH YOUNG,

      Plaintiff,                            Case No. 13-14114

v.                                      Hon. Patrick J. Duggan

BANK OF AMERICA, N.A., aka BAC
HOME LOANS SERVICING, LP, and
BANK OF AMERICA HOME LOANS
and THE BANK OF NEW YORK
MELLON fka THE BANK OF NEW
YORK, as Trustee For the Certificate
Holders of CWABS, Inc., Asset Backed
Certificates Series 2005-SD1,

      Defendants.

_____/

## OPINION AND ORDER

Plaintiff Jasmin T. Smith Young instituted this action against Defendants Bank of America, N.A. ("BANA") and The Bank of New York Mellon, as Trustee for the Certificate Holders of CWABS, Inc., Asset Backed Certificates, Series 2005-SD1 ("BNYM") in state court seeking to redress alleged improprieties in the foreclosure of her home. Along with the underlying complaint, Plaintiff filed a Motion for Preliminary Injunction Tolling the Expiration of the Redemption Period Pending Litigation in the Wayne County Circuit Court on August 27, 2013. After

removing the action to this Court, BANA[1] filed a motion seeking dismissal of

Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Having determined that oral argument would not significantly aid the decisional

process, the Court dispensed with oral argument pursuant to Eastern District of

Michigan Local Rule 7.1(f)(2).  For the reasons stated herein, the Court denies

Plaintiff's Motion for Preliminary Injunction as moot and grants BANA's Motion

to Dismiss.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Note, Mortgage, and Eventual Foreclosure

On December 29, 2004, Plaintiff accepted a $140,229 loan from non-party

Specialty Mortgage Corporation, and, in exchange, executed a promissory note

secured by a mortgage on real property located at 396 Northpointe Boulevard,

Melvindale, Michigan 48122 (the "Property").  (Compl. ¶ 2; Note, Def.'s Mot. Ex.

A; Mortgage, Def.'s Mot. Ex. B.)  The mortgage, executed in favor of Mortgage

Electronic Registration Systems, Inc. ("MERS") as the nominee for the originating

lender and its successors and assigns, was recorded in the Wayne County Register

of Deeds on January 25, 2005 at Liber 42042, pages 740-760.  MERS assigned the

mortgage to BNYM on August 27, 2011.  (Assignment, Def.'s Mot. Ex. C.)  An

assignment reflecting the transfer was recorded with the Wayne County Register of

---

[1] BNYM was never properly served and thus did not join BANA's removal petition.

Deeds on August 31, 2011 at Liber 49342, page 1325.  (*Id.*)  BANA is the servicer

of Plaintiff's loan.  (Def.'s Br. 4 (citing Compl. ¶¶ 7-21).)

      In March 2011, Plaintiff began experiencing financial hardship and

eventually defaulted on her loan obligations by failing to remit timely payments.

(Compl. ¶ 7.)   Plaintiff reached out to BANA in hopes of obtaining a loan

modification.  (*Id.* at ¶ 8.)  Despite being told that "she may qualify for a loan

modification[,]" and despite "promise[s] on several occasions that Plaintiff['s] loan

would be modified[,]" Plaintiff never received the modification she sought.  (*Id.* at

¶¶ 9, 11, 13.)  BANA did, however, indicate in early September of 2012 that "it

would entertain a short sale offer for the property."  (*Id.* at ¶ 13.)

      On October 5, 2012, BANA sent Plaintiff a "Short Sale Amendment to

Approval Letter."  (Compl., Ex. 4.)  The letter "serve[d] as an amendment to our

approval letter dated September 20, 2012 whereby [BANA] . . . agreed to accept a

short payoff involving" the Property.  (*Id.*)  The letter provided the following

relevant amendments to the original approval: (1) "[c]losing must take place no

later than October 17, 2012 or this approval is void[]" and (2) "[t]he approved

buyer(s) is/are Phillip Cook and the sales price for the property is $35,000.00."

(*Id.*)

      Although Plaintiff's Complaint alleges that the terms in the above-described

acceptance letter were "complied with[,]" Plaintiff's own evidence belies this

assertion.  (Compl. ¶ 15.)  Attached as Exhibit 3 to the Complaint is an offer to purchase dated January 27, 2013.  (Compl., Ex. 3.)  An LLC is listed as the purchaser and the offer was signed by Khadgan Chapman.  (*Id.*)  Thus, neither of the prerequisites to the short sale as described in the October 5, 2012 letter were satisfied.  Pursuant to the terms of that letter, the approval was therefore void. (Compl., Ex. 4.)

As a result of the short sale falling though, BNYM accelerated the loan and commenced foreclosure proceedings.  After being adjourned several times, a sheriff's sale was conducted on February 28, 2013, at which BNYM purchased the Property.  (Compl. ¶ 20; Sheriff's Deed, Def.'s Mot. Ex. D.)  Pursuant to Michigan law, Plaintiff had until August 28, 2013 to exercise her statutory right of redemption.  Mich. Comp. Laws § 600.3240(8).

## B.    Legal Proceedings

On August 27, 2013, just one day prior to the expiration of the statutory redemption period, Plaintiff filed a complaint and motion for preliminary injunction in the Wayne County Circuit Court.[2]  BANA, invoking federal diversity jurisdiction, removed the action to this Court on September 26, 2013.  28 U.S.C. §§ 1332, 1441, 1446.  After receiving an extension of the time to file a responsive pleading, BANA filed a Motion to Dismiss pursuant to Federal Rule of Civil

---

[2] Case No. 13-011198-CH.

Procedure 12(b)(6) on October 30, 2013.  Despite apprising the parties of the

Court's motion practice guidelines, Plaintiff did not respond to BANA's Motion

and the time for doing so has expired.

Plaintiff's Complaint sets forth five counts: Count I – Quiet Title; Count II –

Fraudulent Misrepresentation and Inducement; Count III – Promissory Estoppel;

Count IV – Breach of Michigan's Consumer Protection Act ("MCPA"); and Count

V – Intentional Infliction of Emotional Distress.  Each count generally alleges

wrongdoing with the foreclosure by advertisement process based on allegations

that BANA did not modify Plaintiff's loan and did not entertain a short sale after

indicating that it would do so.  As relief, Plaintiff seeks to set aside the deed issued

at the sheriff's sale and to collect damages.

Plaintiff's Motion for Preliminary Injunction asks this Court to toll the

expiration of the redemption period pending litigation.  Insofar as this the

redemption period expired one day after Plaintiff filed the motion, Plaintiff's

request is moot.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

allows a court to make an assessment as to whether a plaintiff's pleadings have

stated a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Under

the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 555-56, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007), a court must construe the complaint in favor of the plaintiff and determine whether the plaintiff's factual allegations present claims plausible on their face.  This standard requires a claimant to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims.  *Id.* at 557, 127 S. Ct. at 1965.  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

In determining whether a plaintiff has set forth a "claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974), courts must accept the factual allegations in the complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.  This presumption, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and

6

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted).  In conducting its analysis, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). In the case at bar, the Court has considered documents, all of which are public, relating to the mortgage, the loan modification process, and the foreclosure.

## III.   ANALYSIS

BANA seeks dismissal of Plaintiff's Complaint on the basis (1) that Plaintiff has failed to plead facts regarding a fraud or irregularity sufficient to justify the

7

equitable extension of the statutory redemption period and (2) that each of

Plaintiff's individual counts fails to state a claim upon which relief can be granted.

**A.    General Principles Pertaining to Michigan's Foreclosure by Advertisement Statute**

Foreclosures by advertisement, such as the foreclosure at issue in this case,

as well as the rights of both the mortgagor and mortgagee after a foreclosure sale

has occurred, are governed by Michigan statutory law.  *See, e.g.*, *Senters v. Ottawa*

*Sav. Bank, F.S.B.*, 443 Mich. 45, 50, 503 N.W.2d 639, 641 (1993); *Conlin v.*

*Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (applying

Michigan law) (citation omitted).

Pursuant to Michigan law, a mortgagor has six months from the date of the

sheriff's sale to redeem a foreclosed property.  Mich. Comp. Laws § 600.3240(8).

Significant consequences flow from a mortgagor's failure to redeem prior to the

expiration of this six-month period: the mortgagor's "right, title, and interest in and

to the property" are extinguished, *Piotrowski v. State Land Office Board*, 302

Mich. 179, 4 N.W.2d 514, 517 (1942), and the deed issued at the sheriff's sale

"become[s] operative, and [] vest[s] in the grantee named therein . . . all the right,

title, and interest [] the mortgagor had[,]" Michigan Compiled Laws § 600.3236.

This rule of law – holding that absolute title vests in the purchaser at the

foreclosure sale upon expiration of the redemption period – has been applied

consistently by state and federal courts alike to bar former owners from making

any claims with respect to a foreclosed property after the statutory redemption period has lapsed.

There is, however, one caveat to the general rule described above.  Once a foreclosure sale has taken place and the redemption period has run, a court may allow "an equitable extension of the period to redeem" if a plaintiff-mortgagor makes "a clear showing of fraud, or irregularity[.]" *Schulthies v. Barron*, 16 Mich. App. 246, 247-48, 167 N.W.2d 784, 785 (1969); *see also Freeman v. Wozniak*, 241 Mich. App. 633, 637, 617 N.W.2d 46, 49 (2000) ("[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements.") (citing *Senters*, 443 Mich. at 55, 503 N.W.2d at 643).  Notably, the purported fraud or irregularity must relate to the foreclosure procedure.  *Reid v. Rylander*, 270 Mich. 263, 267, 258 N.W. 630, 631 (1935) (holding that only the foreclosure procedure may be challenged after a sale); *Freeman*, 241 Mich. App. at 636-38, 617 N.W.2d at 49 (reversal of sheriff's sale improper without fraud, accident, or mistake in foreclosure procedure).

If a plaintiff seeking to set aside the sheriff's sale demonstrates fraud or irregularity in connection with the statutory foreclosure procedure, the result is "a foreclosure that is voidable, not void *ab initio*."  *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115, 825 N.W.2d 329, 337 (2012).  In order "to set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's

9

failure to comply" with Michigan's foreclosure by advertisement statute. *Id.* "To demonstrate such prejudice, [plaintiffs] must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.* at 115-16, 825 N.W.2d at 337 (footnote omitted).

Although the redemption period has expired in the instant case, Plaintiff asks the Court to quiet title in her favor. In asking for this relief, Plaintiff implicitly requests that the Court rescind the sheriff's sale. The posture of this case therefore requires that the Court assess whether Plaintiff's Complaint states a claim upon which relief may be granted within the fraud or irregularity framework outlined above. In other words, the Court must determine whether, under Michigan law, the foreclosure sale is voidable, or could be set aside, on the facts alleged. *See Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (observing that the *Erie* doctrine requires federal courts hearing state law claims to apply the decisions of the state's highest court). After this analysis, the Court addresses the remaining causes of action.

**B.   Setting Aside the Foreclosure Sale**

In Count II, labeled "Fraudul[e]nt Misrepresentation and Inducement", Plaintiff alleges that BANA acted fraudulently with respect to the short sale. Specifically, Plaintiff alleges that BANA "had a duty to honor its agreement after

10

agreeing to the short sale[,]" led Plaintiff "to believe the matter was resolved[,]" "intentionally induced" Plaintiff to seek a buyer for the Property but "concealed the result if the short sale would not be completed," and "concealed facts regarding the  mortgage and adjustable rate note."  (Compl. ¶¶ 34-39.)  Defendant argues that Count II fails to state a claim under the heightened pleading standard of Federal Rule of Civil Procedure 9.

In order to state a *prima facie* claim of fraud under Michigan law, "a plaintiff must establish that: (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury."  *Roberts v. Saffell*, 280 Mich. App. 397, 403, 760 N.W.2d 715, 719 (2008).

Beyond containing each of the aforementioned elements, claims of fraudulent conduct must adhere to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This rule requires a plaintiff: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead where and when the statements were made;

11

and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation omitted); *see also Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) ("As a sister circuit has phrased it," Rule 9(b) requires a plaintiff to "specify the 'who, what, when, where, and how' of the alleged fraud.") (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

Even assuming that Plaintiff's Complaint does contain language referencing each element of a *prima facie* claim of fraud pursuant to Michigan law, it is otherwise threadbare. The Complaint contains little more than conclusory allegations unsupported by the factual enhancement necessary to withstand dismissal pursuant to Rule 9. The Complaint fails to include the "who, what, when, where, and how" of the alleged fraud, and, more importantly, does not explain at all what made BANA's statements regarding the short sale fraudulent. *Sanderson*, 447 F.3d at 877 (quotation omitted); *Republic Bank & Trust Co.*, 683 F.3d at 247. BANA outlined the conditions of any short sale in the October 5, 2012 letter sent to Plaintiff and those conditions were not satisfied. That the short sale did not go through does not mean that BANA fraudulently induced Plaintiff.

Equally fatal to Plaintiff's ability to withstand Defendant's Motion is that Plaintiff's allegations of fraud do not appear to pertain to the foreclosure

12

procedure; rather, the allegations apply only to the loan modification process and the short sale discussions. *See, e.g.*, *Reid*, 270 Mich. at 267, 258 N.W. at 631. Even if fraudulent conduct in the loan modification process or short sale discussions are deemed part of the foreclosure procedure, Plaintiff's Complaint still fails to state a claim as Plaintiff has not alleged actionable prejudice as required by *Kim*. The Complaint does not allege that the purported fraud impacted her ability to make timely mortgage payments and it does not contain allegations "show[ing] that [she] would have been in a better position to preserve [her] interest in the property." *Kim*, 493 Mich. at 115-16, 825 N.W.2d at 337.

Accordingly, Plaintiff has failed to set forth a plausible claim of fraud or irregularity to justify the rescission of the sheriff's deed. The Court therefore dismisses Count II with prejudice.

## C.   Plaintiff's Remaining Counts

### 1.   Quiet Title (Count I)

As an initial matter, the Court notes that quiet title actions are remedies, not independent causes of action. *Goryoka v. Quicken Loan, Inc.*, No. 11-2178, 2013 U.S. App. LEXIS 5524, at * 7 (6th Cir. Mar. 18, 2013) (per curiam) (affirming district court's denial of quiet title count on this basis). Michigan law does, however, provide a statutory mechanism for quieting title, which the Court addresses in the interest of completeness.

13

Michigan Compiled Laws § 600.2932(1) provides, in pertinent part:

> Any person . . . who claims any right in, title to, equitable
> title to, interest in, or right to possession of land, may
> bring an action . . . against any other person who claims
> . . . [an inconsistent interest.]

This statutory language requires a plaintiff seeking to quiet title to establish a substantive right in the property superior to others claiming an inconsistent interest. *Beach v. Twp. of Lima*, 489 Mich. 99, 110, 802 N.W.2d 1, 8 (2011). Plaintiff bears the initial burden of proof and must establish a *prima facie* case of title. *Stinebaugh v. Bristol*, 132 Mich. App. 311, 316, 347 N.W.2d 219, 221 (1984) (citation omitted). "Establishing a *prima facie* case of title requires a description of the chain of title through which ownership is claimed." *Sembly v. U.S. Bank, N.A.*, No. 11-12322, 2012 U.S. Dist. LEXIS 1440, at *9 (E.D. Mich. Jan. 6, 2012) (Rosen, C.J.).

Plaintiff has not alleged facts establishing a *prima facie* case of title. Instead, Plaintiff questions how MERS became a party to the transaction and challenges BANA's standing to initiate the foreclosure. (Compl. ¶¶ 25, 27-30.) Although Plaintiff points out that the note does not list MERS as a party to the transaction, (*id.* at ¶ 25), the mortgage was executed in favor of MERS as the nominee for the originating lender and its successors and assigns. Moreover, BANA was not the foreclosing party, rather, BNYM was. Therefore, BANA's standing to initiate the foreclosure proceedings is entirely irrelevant. BNYM,

14

being the mortgagee of record by virtue of the August 2011 assignment was entitled to foreclose as a matter of law.  Mich. Comp. Laws § 600.3204(3).

Lastly, "Plaintiff does not contest that [s]he failed to pay and defaulted on the loan.  [S]he provides no allegations to indicate that [s]he has a plausible claim of ownership superior to the Bank's."  *Rydzewski v. Bank of N.Y. Mellon*, No. 12-12047, 2012 U.S. Dist. LEXIS 129955, at *10 (E.D. Mich. Sept. 12, 2012) (Cohn, J.).  In fact, Plaintiff's Complaint supports a finding that BNYM has superior title to the Property based on the sheriff's sale and expiration of the redemption period.[3] *Piotrowski*, 302 Mich. at 186, 4 N.W.2d at 516 (explaining that mortgagors lose "all their right, title, and interest in and to the property at the expiration of their right of redemption").

Because Plaintiff has not demonstrated any interest in the Property, the Court dismisses Count I for failure to state a claim upon which relief can be granted.

**2.**     ***Promissory Estoppel (Count III)***

In Count III, Plaintiff seeks to state a claim for promissory estoppel.  It appears as though Plaintiff seeks to invoke the doctrine of promissory estoppel, a doctrine sounding in contract law as a means of compensating a party who has

---

[3] Plaintiff makes no effort to explain why an action to quiet title has been brought against BANA as BANA does not have title to, or claim an ownership interest in, the Property.

partly performed his or her end of the bargain, as a means of rescinding the sheriff's sale and recovering damages.  Defendant argues that the Michigan statute of frauds bars this count as Michigan law applies this statute to "preclude *all* actions for . . . promises and commitments, including actions for promissory estoppel."  *Crown Tech. Park v. D&N Bank, F.S.B.*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (2000) (emphasis in original).

In order to prevail under a promissory estoppel theory under Michigan law, a plaintiff must establish: (1) a promise; (2) that the promisor reasonably should have expected to induce action of a definite and substantial character on the part of the promisee; (3) that the promise produced an actual reliance or forbearance; and (4) that the claimed reliance or forbearance occurred under circumstances requiring an enforcement of the promise in order to avoid an injustice.  *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41, 761 N.W.2d 151, 166 (2008).  The gravamen of Plaintiff's promissory estoppel count is that BANA promised Plaintiff that a short sale would be approved and that Plaintiff relied on this assurance to her detriment.

As Defendant argues, Michigan's statute of frauds precludes Plaintiff's promissory estoppel claim.  Hornbook contract law teaches that certain agreements must be in writing to be enforceable and that a state's statute of frauds supplies the types of agreements that fall within this category.  Michigan's statute of frauds

16

expressly provides that "an action shall not be brought against a financial institution to enforce [a promise or commitment to make any financial accommodation respecting a loan] unless the promise or commitment is in writing and signed with an authorized signature by the financial institution[.]"  Mich. Comp. Laws § 566.132(2).  Courts interpreting this statute have deemed its language unambiguous, holding that individuals are "precluded from bringing a claim--no matter its label--against a financial institution to enforce the terms of an oral promise to waive a loan provision."  *Crown Tech.*, 242 Mich. App. at 550, 619 N.W.2d at 72 (noting that the statute "specifically bars 'an action[,]' and interpreting the legislature's failure to specify what type of "'action' . . . as an unqualified and broad ban").  This ban applies to claims of promissory estoppel. *Id.* ("[I]t would make absolutely no sense to conclude that the Legislature enacted a new section of the statute of frauds specifically addressing oral agreements by financial institutions but, nevertheless, the Legislature still intended to allow promissory estoppel to exist as a cause of action for those same oral agreements.").

The only promise arguably satisfying the statute of frauds is the October 5, 2012 letter from BANA outlining the conditions of the approved short sale. Plaintiff did not abide by the conditions set forth in that letter and therefore, BANA had no duty to perform.  In fact, the letter specifically provided that the short sale would be approved as long as the closing took "place no later than October 17,

2012 or this approval is void[.]" (Compl., Ex. 4.)  There is no other writing signed by BANA indicating that this condition had been extended or otherwise amended and Plaintiff does not allege as much.  Accordingly, once October 17, 2012 passed, the short sale agreement was effectively voided.  As such, there is no promise to enforce and Plaintiff's promissory estoppel claim must be dismissed with prejudice.

### 3.   *Michigan Consumer Protection Act Violation (Count IV)*

In Count IV, Plaintiff alleges that BANA violated the MCPA, which prohibits the use of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce.  Mich. Comp. Laws § 445.903(1).  Without delving into the mechanics of the MCPA, too deeply, "[b]oth Michigan courts and federal courts applying Michigan law have consistently held that the MCPA does not apply to claims arising out of residential mortgage transactions."  *Sembly v. U.S. Bank, N.A.*, No. 11-12322, 2012 U.S. Dist. LEXIS 1440, at *15-16 (E.D. Mich. Jan. 6, 2012) (unpublished) (citation omitted); *see also Newton v. Bank West*, 262 Mich. App. 434, 442, 686 N.W.2d 491, 493-94 (2004) (concluding that "residential mortgage loan transactions fit squarely within the [MCPA] exemption" exempting transactions and conduct "specifically authorized" by law); *Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903, 910 (E.D. Mich. 2003), *aff'd*, 172 F. App'x 652 (6th Cir. 2006.  Because the failed short sale transaction that serves as the

18

basis for Plaintiff's claim is a transaction "specifically authorized" by law, and because the MCPA does not apply to the residential mortgage loan transaction at issue in this case, the Court dismisses Plaintiff's MCPA count with prejudice.

### 4.    *Intentional Infliction of Emotional Distress (Count V)*

In Count V, Plaintiff asserts a claim of intentional infliction of emotional distress.  Under Michigan law, this requires Plaintiff to show: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.  *Jones v. Muskegon Cnty.*, 625 F.3d 935, 948 (6th Cir. 2010) (applying Michigan law) (citing *Vredevelt v. GEO Grp., Inc.*, 145 F. App'x 122, 135 (6th Cir. 2005)).  "Such conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'"  *Id.* (quoting *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999)).

Although the Complaint alleges that BANA's "conduct regarding this transaction has been so outrageous[] that it offends the sensibilities of a civilized society[,]" (Compl. ¶ 51), the Complaint is devoid of any factual allegations supportive of this conclusory assertion.  The Court therefore dismisses Count V with prejudice.

### IV.    CONCLUSION AND ORDER

For the reasons set forth above, each count contained in Plaintiff's Complaint fails to state a claim upon which relief can be granted.  Although BNYM did not join the removal petition (nor was it required to since Plaintiff failed to effectuate proper service upon it), the only count even arguably applying to BNYM is the Quiet Title count (Count I).  This is evidenced by the complete lack of any reference to BNYM outside of the Complaint's statement of facts.  The Court therefore dismisses Plaintiff's Complaint against both BANA and BNYM pursuant to Rule 12(b)(6).

Accordingly,

**IT IS ORDERED** that Defendant BANA's Motion to Dismiss, (ECF No. 8), is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction is **DENIED AS MOOT**.

Date:  December 9, 2013

                                             s/PATRICK J. DUGGAN
                                             UNITED STATES DISTRICT JUDGE

Copies to:
**Delicia Coleman, Esq.**
**Brian C. Summerfield, Esq.**
**Trevor M. Salaski, Esq.**